UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KATHLEEN HANOVER, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:22-cv-209 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| REAL TIME RESOLUTIONS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND RRA CP OPPORTUNITY TRUST 1'S MOTION FOR SUMMARY JUDGMENT (COUNTS FOUR AND FIVE OF COMPLAINT) (DOC. NO. 15)**

---

Presently before the Court is Defendants Mortgage Electronic Registration Systems, Inc. and RRA CP Opportunity Trust 1's Motion for Summary Judgment (Counts Four and Five of Complaint) ("Motion") (Doc. No. 15).  In the Motion, Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and RRA CP Opportunity Trust 1 ("RRACP") (collectively, "Defendants") seek summary judgment on two claims.  (Doc. No. 15 at PageID 134.)  Specifically, Defendant seeks summary judgment on Count Four, seeking declaratory judgment under 28 U.S.C. § 2201, and Count Five, seeking declaratory judgment under Ohio Rev. Code § 2721.01, that Plaintiff Kathleen Hanover's ("Hanover") Home Equity Line of Credit ("HELOC") and the corresponding mortgage on her property should be deemed cancelled and/or released.  (*Id*.) Hanover argues that enforcement of the HELOC and mortgage are time barred under the relevant statute of limitations in Ohio.  (Doc. No. 19 at PageID 264-67.)

For the reasons discussed below, Defendants' Motion is **GRANTED**.

1

I.  **BACKGROUND**

On or about December 18, 2006, Hanover and Greenpoint Mortgage Funding, Inc.[1] ("Greenpoint") entered into a Home Equity Line of Credit Agreement ("HELOC") (Doc. No. 16 at PageID 220-32), Promissory Loan (*Id*. at PageID 168-71), and Open-End Mortgage ("Mortgage") (*Id*. at PageID 150-62). The HELOC included a maturity date of January 15, 2022, at which point Hanover would be expected to pay any remaining account balance. (*Id*. at PageID 221.) Under the terms of the HELOC:

> **18. TERMINATION AND ACCELERATION. DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.** You will be in default of this Agreement, and we can terminate your Account and require immediate payment of the entire outstanding Loan Account Balance, plus accrued interest and other charges if any of the following occur: (a) you engage in fraud or material misrepresentation in connection with any phase of this Line of Credit; (b) you fail to meet the repayment terms of this Agreement for any outstanding balance; or (c) your action or inaction adversely affects the Property, our security interest or any other right that we have in the Property, including, but not limited to: (i) failure to maintain required insurance on the Property; (ii) the sale, transfer, conveyance, or encumbrance of the Property in violation of the Security Instrument; (iii) failure to maintain the Property or use of the Property in a destructive or illegal manner, (iv) commission of waste; (v) failure to pay taxes on the Property or otherwise act or fail to act and thereby cause a lien to be filed against the Property that is senior to the lien of the Security Instrument; (vi) your death, if you are solely obligated under this Agreement, or if the death of one of several Borrowers under this Agreement causes our security to be adversely affected; (vii) the Property is taken through eminent domain; (viii) a judgment is filed against you and subjects you and the Property to action that adversely affects our interest; (ix) a prior lienholder forecloses on the Property and as a result, our interest is adversely affected; or (x) you move out of the dwelling and our security interest is thereby adversely affected. The Security Instrument also describes how and under what conditions you may be required to make immediate payment of the entire outstanding Loan Account Balance, plus accrued interest and other charges you owe under this Agreement.
>
> **19. REMEDIES.** Subject to applicable law, we may terminate your Line of Credit,

---

[1] Greenpoint Mortgage Funding, Inc. is not a party to this action.

> require you to pay the entire outstanding Loan Account Balance in one payment, charge you a termination fee (if provided for in this Agreement), and charge you any other fees related to the collection of the amount owing if you are in default in any manner described above… We can elect to exercise or delay enforcement of any of our rights under this Agreement and/or the Security Instrument without losing any such rights. If we elect not to exercise or enforce any of our rights, such election shall not be deemed a waiver of any of those rights. If we elect to terminate this Plan and accelerate the amounts owing on your Account, we may use our right to set-off, unless prohibited by applicable law.
>
> **24. TERMINATION OF AGREEMENT.** Your Account will automatically terminate on the earlier of the Maturity Date shown above or on the date we give you notice of the termination as the result of an occurrence of a default (as described in Section 18). Upon termination of the Account, the entire Loan Account Balance then outstanding, with accrued interest and any fees and charges owing on the Account, will be due and payable in full on that date. You can terminate this Agreement by written notice of termination of this Agreement and a request for a discharge of the Security Instrument mailed or delivered to us at any time. Your notice of termination will be effective on the first business day after we receive it and the entire principal balance outstanding on your Account, plus interest accrued thereon, together with fees and charges owing on the Account, will be due and payable in full on that date.

(Doc. No. 16 at PageID 226, 228.)

As a security for the HELOC, Hanover also executed the Mortgage with a stated maturity date of January 15, 2022. (*Id*. at PageID 151.) The Mortgage contained several Non-Uniform Covenants, including an acceleration clause and a clause covering senior liens.

> **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses

3

> incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> **24. Senior Lien.** In the event that there is a lien senior to the lien of this Mortgage, Borrower agrees to fully discharge such lien according to its terms. In the event that the holder of the lien commences proceedings to foreclose the lien in preparation for selling the Property to satisfy the lien, Lender may take action to reinstate or, at Lender's option, repay the lien in full and obtain a full release or an assignment of the lien from the lienholder. Any amounts so expended by Lender shall be secured by the lien of this Mortgage. Any default of Borrowers in discharging their obligations to the senior lienholder shall be a default under this Mortgage giving Lender the rights set forth in Section 22 and elsewhere in this Mortgage.

(*Id*. at PageID 159.)

Hanover ceased making payments on her loan in July 2011. (*Id*. at PageID 250-54.) On September 28, 2012, Greenpoint notified Hanover that it was transferring the right to collect payment on the Mortgage to Defendant Real Time Resolutions, Inc.[2] ("RTR"). (Doc. No. 1-1 at PageID 35.)

On December 5, 2013, the senior lienholder on the mortgage, 21st Mortgage Corporation, filed a Complaint for Foreclosure in the Common Pleas Court for Montgomery County, Ohio. (Doc. No. 16 at PageID 163-66.) The matter was ultimately resolved by a stipulated dismissal on February 12, 2015. (*Id*. at PageID 215.) Greenpoint, named as a defendant in the action, did not file a crossclaim for default under the Mortgage. (*Id*. at PageID 141.)

Hanover received notice from RTR on October 27, 2021, informing her that the loan would mature on January 25, 2022. (*Id*. at PageID 246.) The notice further stated that the outstanding balance would become due on that date. (*Id*.)

Hanover filed her Complaint for Damages ("Complaint") (Doc. No. 1) in this action on August 1, 2022, alleging claims under the Fair Debt Collection Practices Act, the Ohio Residential

---

[2] RTR did not joined or opposed this Motion. Nor did RTR file its own motion for summary judgment.

4

Mortgage Lending Act, and the Ohio Consumer Sales Practices Act. (Doc. No. 1 at PageID 1-11.) Hanover further sought declaratory judgment for cancellation of the Note and release of the Mortgage under both 28 U.S.C. § 2201 and Ohio Rev. Code § 2721.01. (*Id*. at PageID 12-16.) Defendants filed the present Motion on June 9, 2023. (Doc. No. 15.) Hanover filed her opposition on July 17, 2023 (Doc. No. 19) and Defendants filed their reply on August 11, 2023 (Doc. No. 22). The Motion is fully briefed and ripe for review and decision.

II.     **LEGAL STANDARDS FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified]

5

pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

As judgment is sought on claims brought under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court of the State." *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001). To the extent that the highest court in

Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id*. This is done by looking to other available data, which "include decisions of the state appellate courts, and those decisions should not be disregarded unless" presented with persuasive data that the Supreme Court of Ohio would decide otherwise; instead, such decisions should be given weighty, but not controlling, deference. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001); *see also Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 5 (6th Cir. 2021).

### III. ANALYSIS

Hanover's Complaint alleges that enforcement of the HELOC and Mortgage are time-barred under Ohio Rev. Code § 1303.16(A) and Ohio Rev. Code § 2305.06. (Doc. No. 1 at PageID 12-16.) Specifically, the Complaint alleges that under the statute RTR, "had six (6) years or until December 4, 2019 at the latest to file an action on a default of the note," and, "eight (8) years or until July 26, 2019 to bring an action on the default of the mortgage for non-payment," and, "eight (8) years or until December 5, 2021 at the latest to bring an action on the default of the mortgage for non-payment based on the acceleration caused by the foreclosure filing." (*Id*. at PageID 13, 15-16.)

Defendants argue that the enforcement of the Mortgage is not affected by whether enforcement of the note is time-barred. (Doc. No. 16 at PageID 143-45.) Moreover, Defendants contend that the statute of limitations to enforce the Mortgage did not begin to run until the date of maturity. (*Id*. at PageID 147-48.) In opposition, Hanover argues that the statute of limitations began running on the HELOC at the time she ceased making payments in July 2011 or, at the latest, when 21st Mortgage Corporation filed its Complaint for Foreclosure on December 5, 2013. (Doc. No. 19 at PageID 264-65.) Hanover further argues that, under Ohio law, if a claim on the

underlying promissory note is time-barred, so is any claim on the mortgage. (*Id*. at PageID 266.) Hanover finally asserts that if Defendants have a claim under the Mortgage, it must be made in this action pursuant to Fed. R. Civ. P. 13 governing compulsory counterclaims. (*Id*. at PageID 274-72.)

### A. Statute of Limitations on the HELOC

As an initial matter the Court must determine if and when the statute of limitations began running on the HELOC. Hanover argues that the HELOC is not a negotiable instrument under Ohio law and, therefore, Ohio Rev. Code § 2305.06 and the applicable eight-year time period applies. (Doc. No. 19 at PageID 264-65.) Further, Hanover argues that the statute of limitations either began running on July 25, 2011 when she failed to make her payment or December 5, 2013 when the foreclosure action was filed. (*Id*.)

Defendants argue that the statute of limitations began running on the date of maturity, January 15, 2022, and that, regardless of what statute of limitation is applied, a claim to enforce the HELOC is still valid. (Doc. No. 22 at PageID 297-98.) Moreover, as the HELOC contained an optional acceleration clause, Defendants argue that the statute of limitation did not begin to run earlier because the optional acceleration was never exercised. (*Id*. at PageID 298-300.)

### i. The Applicable Statute of Limitations

Under Ohio law the statute of limitations in an action seeking "to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." Ohio Rev. Code § 1303.16(A). A "note" is "an instrument that is a promise." Ohio Rev. Code § 1303.03(E)(1). An "'instrument' means a negotiable instrument." Ohio Rev. Code § 1303.03(B). Finally, a "'negotiable instrument' means an unconditional promise or order to pay a

8

fixed amount of money, with or without interest or other charges described in the promise or order…." Ohio Rev. Code § 1303.03(A). Typically, an action against a mortgagor for personal judgment is an action on the promissory note and is governed by Ohio Rev. Code § 1303.16(A)'s six-year statute of limitations. *U.S. Bank Nat'l Assoc. v. O'Malley*, 2019-Ohio-5340, ¶ 17, 150 N.E.3d 532, 539 (Ohio Ct. App. 2019).

However, Ohio courts, when evaluating negotiable instruments, have consistently looked to the contingent nature of line of credit agreements, which depend on "whether the borrower draws on the credit line." *SMS Fin. 30, LLC v. Frederick D. Harris, M.D., Inc.*, 2018-Ohio-2064, ¶ 17, 112 N.E.3d 395, 400 (Ohio Ct. App. 2018). Indeed, as the court in *SMS* explained:

> If the borrower does draw on the line of credit, in order to ascertain the principal owed, one must look beyond the agreement itself to calculate the amount owed, thus removing it from being classified as a negotiable instrument. Accordingly, if the LOC is not a negotiable instrument, it is merely a written contract and enforcement becomes an action on an account or contract (much like a credit card agreement).

*Id*. (citations omitted). Consequently, as a line of credit is not a negotiable instrument, the statute of limitations set forth in Ohio Rev. Code § 1303.16(A) does not apply. *SMS Fin. 30*, 2018-Ohio-2064, ¶ 18; *U.S. Bank v. Richardson*, 2022-Ohio-4753, ¶ 20, 203 N.E.3d 1290, 1293 (Ohio Ct. App. 2022).

Instead, the statute of limitations set forth for contracts in Ohio Rev. Code § 2305.06 applies to the HELOC. The current version of § 2305.06 provides that an action shall accrue within six years. *Id*. However, § 2305.06 was modified in 2012 to revise the statute of limitations from fifteen years to eight years. *SMS Fin. 30*, 2018-Ohio-2064, ¶ 19. "The General Assembly explained that if the cause of action accrued prior to September 28, 2012, the statute of limitations is the lesser of 15 years from the date of accrual or eight years from September 28, 2012, the effective date of the amendment." *Id*. (citing 2012 Am.Sub.S.B. No 224, Section 4).

9

### ii. **When the Statute of Limitations Began to Run**

Due to the varying lengths of time that could serve as the statute of limitations, the next issue the Court must address is when it began to run in this case. For instance, if Hanover's argument is accepted that the statute of limitations began to run when she first failed to make a payment on July 25, 2011, then the statute of limitations would have run on September 28, 2020.[3] If her alternate argument is accepted, that the statute of limitations began to run when the foreclosure action was filed on December 5, 2013, then the statute of limitations would have run on December 5, 2021. On the other hand, Defendants argue that the statute of limitations did not begin to run until the maturity date on January 15, 2022. Thus, the statute of limitations would not run until January 15, 2028.

Hanover argues that the breach of the HELOC occurred when she failed to make a payment on July 25, 2011. (Doc. No. 19 at PageID 264.) Defendants, in turn, argue that even if the HELOC is just a contract, it still contains an optional acceleration clause. (Doc. No. 22 at PageID 298-99.) Thus, the statute of limitations would not begin to run until the acceleration clause was exercised or the maturity date was reached. (*Id.*)

Hanover, points to Ohio caselaw standing for the proposition that, "a breach of an agreement to repay a debt accrues upon failure to make an agreed-upon periodic payment." (Doc. No. 19 at PageID 264 (citing *Taylor v. First Resolution Inv. Corp.*, 2016-Ohio-3444, ¶¶ 50, 52, 148 Ohio St. 3d 627, 641 (Ohio 2016).) In Ohio "[t]he general rule regarding loans repayable in installments is that each default in payment may give rise to a separate cause of action." *U.S. Bank Nat'l Assn. v. Gullotta*, 2008-Ohio-6268, ¶ 30, 120 Ohio St. 3d 399, 992 (Ohio 2008) (citing

---

[3] As explained above, "the statute of limitations is the lesser of 15 years from the date of accrual or eight years from September 28, 2012, the effective date of the amendment." *SMS Fin. 30*, 2018-Ohio-2064, ¶ 19 (citing 2012 Am.Sub.S.B. No 224, Section 4). As the lesser date from July 11, 2011 would be eight years from the effective date, September 28, 2020 would be the date the statute of limitations would have run under this theory.

10

*Humitsch v. Collier*, No. 99-L-099, 2000 Ohio App. LEXIS 6196, at *9, 2001 WL 20733, at *4 (Ohio Ct. App. Dec. 29, 2000)). However, the parties, "may avoid the operation of this rule by including an acceleration clause in the agreement." *Gullotta*, 2008-Ohio-6268, ¶ 30 (citing *Humitsch*, 2000 Ohio App. LEXIS 6196, at *9, 2001 WL 20733, at *4). "An acceleration clause 'requires the maker, drawer or other obligor to pay part or all of the balance sooner than the date or dates specified for payment upon the occurrence of some event or circumstance described in the contract… [,]' such as a default by nonpayment." *Gullotta*, 2008-Ohio-6268, ¶ 30 (quoting *Citizens Bank of Logan v. Marzano*, 2005-Ohio-163, ¶ 16 (Ohio Ct. App. 2005)). Indeed, where an acceleration clause is optional the statute of limitations will not begin to run until the clause is exercised or, if it is never exercised, until the maturity date is reached. *Taylor v. Quinn*, 68 Ohio App. 164, 169 (Ohio Ct. App. 1941) (holding that where the acceleration clause had not been exercised the statute of limitations did not begin to run until the note matured); *see Hitachi Med. Sys. America, Inc. v. Empire Imaging, P.C.*, No. 5:11-cv-446, 2013 U.S. Dist. LEXIS 42463, at *22, 2013 WL 1284315, at *7 (N.D. Ohio Mar. 26, 2013) ("If the provision is considered an acceleration clause, [the defendant] would not have been in default, despite unpaid installments, because there is no evidence in the record that [the plaintiff] properly invoked the provision by exercising its option under the language of the clause").

The question then becomes whether the statute of limitations began to run when Hanover first failed to make a payment, when 21st Mortgage Corporation brought the suit for default, or when the HELOC matured on January 15, 2022. As an initial matter, no caselaw is directly on point with this case. The breach of contract cases cited by Hanover largely pertain to credit card debt, while the cases cited by Defendants apply in the note and mortgage context. That being said, the caselaw in Ohio is consistent on the point that the inclusion of an acceleration clause gives the

11

parties the ability to avoid the typical rule that each non-payment of an installment gives rise to a separate action. *Gullotta*, 2008-Ohio-6268, ¶ 30. If a party is not in default, despite non-payments, where the exercise of an acceleration clause is optional and has not been invoked, then the statute of limitations cannot logically begin to run on the event of a non-payment. *See Hitachi Med. Sys.*, 2013 U.S. Dist. LEXIS 42463, at *22, 2013 WL 1284315, at *7.

As the evidence in this case demonstrates, no party ever took the steps necessary to accelerate the HELOC under the "REMEDIES" paragraph. (Doc. No. 16 at PageID 226.) Consequently, the appropriate date to look at would be the maturity date of the HELOC, January 25, 2022. Therefore, the Court finds that the HELOC is still enforceable.

### B. Statute of Limitations on the Mortgage

Hanover next argues that Ohio law bars an action for foreclosure based on the mortgage where the statute of limitations has run on the note. (Doc. No. 19 at PageID 267 (citing *Kerr v. Lydecker*, 51 Ohio St. 240, 254-55, 37 N.E. 267, 270-71 (Ohio 1894).) Defendants, conversely, point to Ohio caselaw holding that an action on a promissory note and an action to enforce a mortgage are distinct remedies. (Doc. No. 16 at PageID 143 (citing *Deutsche Bank Nat'l Trust v. Holden*, 2016-Ohio-4603, 147 Ohio St. 3d 85 (Ohio 2016).)

The Ohio Supreme Court in *Holden* held, "[w]e have long recognized that an action for a personal judgment on a promissory note and an action to enforce mortgage covenants are 'separate and distinct' remedies." *Holden*, 2016-Ohio-4603, at ¶ 25 (citing *Carr v. Home Owners Loan Corp.*, 148 Ohio St. 533, 540, 76 N.E.2d 389, 393 (Ohio 1947)). The *Holden* court further held, "'the bar of the note or other instrument secured by mortgage does not necessarily bar an action on the mortgage.'" *Holden*, 2016-Ohio-4603, at ¶ 25 (quoting *Kerr*, 51 Ohio St. at 253).

Ohio courts have extended the *Holden* reasoning by applying it to statute of limitations

questions.[4] In applying *Holden*, both the state courts of Ohio and the Northern District of Ohio, have held that even where the statute of limitations has run on the promissory note the mortgage is still enforceable. *Bank of New York Mellon v. Walker*, 2017-Ohio-535, ¶¶ 22-24, 78 N.E.2d 903, 938 (Ohio Ct. App. 2017) (holding that the plaintiff could still enforce the mortgage even where the statute of limitations on the note had expired); *U.S. Bank Nat'l Ass'n v. O'Malley*, 2019-Ohio-5340, ¶ 22, 150 N.E.3d 532, 540 (Ohio Ct. App. 2019) ("If a mortgagee is unable to enforce a promissory note due to the running of the statute of limitations, the mortgagee still has the right to enforce an action on the mortgage…"); *Rutana v. Koulianos*, 2020-Ohio-6848, ¶ 42, 164 N.E.3d 1108, 1118 (Ohio Ct. App. 2020) ("Appellee could bring the instant counterclaim for foreclosure regardless of… whether the claim on the underlying debt was time-barred. The foreclosure action is a separate and distinct action and remedy from collecting on the debt since it is an action to enforce a property interest created by the mortgage"); *SRB Servicing, LLC v. McIntyre*, No. 1:17-cv-665, 2018 U.S. Dist. LEXIS 96036, at *10-11, 2018 WL 2738879, at *3-4 (N.D. Ohio May 30, 2018) ("the [c]ourt holds, in line with *Walker*, that the present foreclosure action, as an action arising under the mortgage rather than the promissory note, is not barred by the expiration of the six-year statute of limitations governing the note").

Moreover, similar to the HELOC, the Mortgage contains an acceleration clause that requires the lender to provide notice to the borrower that it was exercising its rights under the acceleration clause. (Doc. No. 16 at PageID 159.) No evidence has been presented that the

---

[4] Hanover argues that the Court should disregard the decisions of Ohio's lower courts because the "the duty of federal courts [is] to apply state law as pronounced by that state's highest court." (Doc. No. 19 at PageID 267 (citing *Wichita Royalty Co. v. City Nat'l Bank*, 306 U.S. 103, 107, 59 S. Ct. 420. 421-22 (1939).) However, as explained in Section II above, where the state's highest court has not ruled on an issue, the district court must anticipate how it would rule. *Imperial Hotels*, 257 F.3d at 620. This includes looking at the decisions of the state appellate courts unless the Court is presented with evidence that the state supreme court would rule otherwise. *Allstate*, 249 F.3d at 454. The Court is not persuaded that the Ohio Supreme Court would rule contrary to the holdings of the state appellate courts cited in Section III.B given the changes in state law post-*Holden*.

acceleration clause was exercised or that the notice necessary to effectuate the clause was sent to Hanover.

Hanover also argues that under the terms of the Mortgage, the first foreclosure filing on December 5, 2013 was a default and the statute of limitations on any claim on the Mortgage began to run from that date.  (Doc. No. 19 at PageID 265.)  Hanover misinterprets the Senior Lien paragraph of the Mortgage.  The Mortgage states:

> **24. Senior Lien.**  In the event that there is a lien senior to the lien of this Mortgage, Borrower agrees to fully discharge such lien according to its terms…  Any default of Borrowers in discharging their obligations to the senior lienholder shall be a default under this Mortgage giving Lender the rights set forth in Section 22 and elsewhere in this Mortgage.

(Doc. No. 16 at PageID 159.)  Hanover highlights the phrase "[a]ny default of Borrowers in discharging their obligations to the senior lienholder shall be a default under this Mortgage," but fails to recognize the importance of the second half of the sentence, "*giving Lender the rights set forth in Section 22* and elsewhere in this Mortgage." (*Id*.) (emphasis added).  Section 22 of the Mortgage states:

> **22. Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law….

(*Id*. at PageID 159.)  Section 22 gives the lender the right to accelerate the loan after a

14

borrower defaults, but the lender must take affirmative steps to exercise that right. There is no evidence that the Mortgage was ever accelerated. As explained above, the inclusion of an optional acceleration clause allows the parties to avoid the typical operation of a default breaches in installment agreements. *Gullotta*, 2008-Ohio-6268, ¶ 30.

Therefore, Defendants may still enforce the Mortgage.

### C. Compulsory Counterclaims

Hanover finally argues that under Fed. R. Civ. P. 13(a), Defendants must assert their claims under the Mortgage as compulsory counterclaims. (Doc. No. 19 at PageID 271-72.) In response, Defendants cite a string of caselaw from various federal and state courts purportedly holding that a mortgagor should not be able to destroy a mortgagee's right to foreclosure by bringing a suit that would compel the mortgagor to either exercise its foreclosure right or abandon it. (Doc. No. 22 at PageID 303.)

Under Fed. R. Civ. P. 13(a)(1):

> A pleading must state as a counterclaim any claim that—at the time of service— the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Consequently, "[i]t is well established that failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action." *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991). The Sixth Circuit has rejected a literal application of Rule 13(a) and instead focuses on whether a "logical relationship" exists between the claim and counterclaim. *Bauman v. Bank of America, N.A.*, 808 F.3d 1097, 1101 (6th Cir. 2015) (citing *Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 383 (6th Cir.1984)). In evaluating whether a "logical relationship" exists the Court must determine, "'whether the issues of law and fact raised by the

claims are *largely the same* and whether *substantially the same* evidence would support or refute both claims.'" *Bauman*, 808 F.3d at 1101 (quoting *Sanders*, 936 F.2d at 277) (emphasis original).

To prevail in a foreclosure action, a party must prove the following elements: (1) the movant is the holder of the note and validly recorded mortgage and is entitled to enforce the instrument; (2) the mortgagor is in default; and (3) the amount of principal and interest owed. *Smith v. Household Realty Corp.*, No. 2:16-cv-360, 2016 U.S. Dist. LEXIS 133423, at *5, 2016 WL 5408888, at *2 (S.D. Ohio Sep. 28, 2016) (citing *Countrywide Home Loans, Inc. v. Baker*, 2010-Ohio-1329, ¶ 8 (Ohio Ct. App. Mar. 30, 2010)). Similarly, an ejectment action "is available where the plaintiff has a legal title and is entitled to the possession of the real property but is unlawfully kept out of the possession by the defendant." *Liberty Self-Stor, Ltd. v. Porter*, 2007-Ohio-1510, ¶ 20 (Ohio Ct. App. 2007) (citing *Turnbull v. City of Xenia*, 80 Ohio App. 389, 392, 69 N.E.2d 378, 379 (Ohio 1946)).

Defendants argue that, "[b]orrowers should not be permitted to ostensibly re-write the election of remedies in the HELOC and Mortgage merely by commencing an action to challenge the validity of the debt." (Doc. No. 22 at PageID 304.) However, the cases cited by Defendants are unavailing. Virtually every case cited by Defendants involve cases where a foreclosure action was not a compulsory counterclaim as a function of state law or where state law provided a non-judicial foreclosure remedy. *See Kaspar v. Keller*, 466 S.W.2d 326, 329 (Tex. Ct. App. 1971) (holding that under the Texas rules of civil procedure the rules "shall not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action" and holding that Texas caselaw did not require foreclosure as a compulsory counterclaim); *Douglas v. NCNB Texas Nat. Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992) (applying *Kaspar* to an action involving Texas state law and rules of civil procedure); *Nunnery v. Ocwen Loan Servicing, L.L.C.*, 641 F.

App'x 430, 433-34 (5th Cir. 2016) (applying *Kaspar* to an action involving Texas state law and rules of civil procedure); *Deschamps v. Treasure State Trailer Court, Ltd.*, 254 P/3d 566, 569 (Mont. 2011) (holding that a *nonjudicial* foreclosure action was not contemplated by the M.R. Civ. P. 13(a) or Montana state law governing foreclosure); *Belote v. McLaughlin*, 673 S.W.2d 27, 29-31 (Mo. 1984) (en banc) (holding that the Missouri rule of civil procedure governing counterclaims did not bar the remedy of *nonjudicial* foreclosure where it was not previously pled as a counterclaim in a separate action); *In re Draffen*, 731 S.E.2d 435, 437 (N.C. Ct. App. 2012) (holding that a foreclosure was not a compulsory counterclaim under Fed. R. Civ. P. 13(a) where North Carolina state law provided for an expedited foreclosure procedure that could be included as a contractual right); *Adelson v. Ocwen Loan Servicing, LLC*, No. 19-13569, 2020 U.S. Dist. LEXIS 210785, at *28 n.9, 2020 WL 7294361, at *6 n. 9 (E.D. Mich. Aug. 20, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 210049, 2020 WL 6580628 (E.D. Mich. Nov. 10, 2020) (finding that a foreclosure action was not a compulsory counterclaim under Fed. R. Civ. P. 13(a) where Michigan state law provided for *non-judicial* foreclosure); *Fnbn-Rescon I LLC v. Citrus El Dorado LLC*, No. SA CV 13-0474-DOC, 2015 WL 11416171, at *5 (E.D. Cal. Feb. 6, 2015) (finding that a foreclosure action was not a compulsory counterclaim under Fed. R. Civ. P. 13(a) where California state law provided for *non-judicial* foreclosure). Defendants point to no such state laws in this case.

Defendants cite one case from Ohio in support of their position, *Wells Fargo Bank, N.A. v. Lee*, 2014-Ohio-4514, 20 N.E.3d 1236 (Ohio Ct. App. 2014). However, *Lee* is distinguishable from the case at hand. In *Lee*, the defendants had filed claims for common law fraud, civil conspiracy, and a violation of the Truth in Lending Act in a separate federal court action. *Lee*, 201-Ohio-4514, at ¶ 34. One of the remedies the defendants had sought was the recission of their

mortgage. *Id*. On appeal in the subsequent state court action, the defendants argued that the plaintiff, the bank that held the mortgage, should have brought their foreclosure action as a compulsory counterclaim in the federal court action and that it should accordingly be barred from bringing the foreclosure action in state court. *Id*. The *Lee* court held:

> Even though the loan could have been rescinded, there was no obligation upon the holder of the note to seek to enforce its rights in the prior lawsuit. The earlier action merely decided whether the [plaintiffs] had a valid defense to the enforcement of the note and mortgage. The holder of the note is a necessary party to the action in order to preserve its interests in the note and mortgage. Had the [plaintiffs] been successful and obtained rescission of the mortgage, the holder of the note would not have been able to enforce the note and mortgage. However, the mere fact that a debtor preemptively sought to assert certain claims that would affect later enforcement of a note does not require that the holder must assert a debt collection action at the same time. We conclude that the trial court did not err in finding that the doctrine of res judicata did not bar the claims of [the defendant].

*Id*. at ¶ 40.

In reaching this conclusion, *Lee* cited to *Maddox*. In *Maddox*, the Sixth Circuit found that the collectability of the debt was not "logically related" to the issue of whether a creditor violated the Truth in Lending Act even where both claims arose out of the same transaction. 736 F.2d at 383. The *Maddox* court further found:

> While the claim and counterclaim do arise out of the same transaction within the literal terms of Rule 13(a), we do not believe that they are logically related in such a way as to make the counterclaim compulsory. The claim and counterclaim will present *entirely different legal, factual, and evidentiary questions*. It is not clear that the interests of judicial economy and efficiency would be served in the least by requiring that the two claims be heard together.

*Id*. (emphasis added).

Both *Maddox* and *Lee* involved cases governed by statutes aimed at ensuring fair practices surrounding the loaning of money and the collection of debt. The recission of the mortgage in the prior federal court action in *Lee* would necessarily have been predicated on violations of the Truth in Lending Act and, as explained in *Maddox*, would have "present[ed] entirely different legal,

18

factual, and evidentiary questions." *Id*. That is not the case here. Nor is it the pronouncement of this Court that a foreclosure or ejectment action will always be a compulsory counterclaim.

Based on Hanover's declaratory judgment action and the elements of foreclosure and ejectment actions in Ohio, the Court finds "'the issues of law and fact raised by the claims are *largely the same*,'" and, "'*substantially the same* evidence would support or refute both claims.'" *Bauman*, 808 F.3d at 1101 (quoting *Sanders*, 936 F.2d at 277) (emphasis original). As discussed above, one of the dominant questions in the declaratory judgment actions was whether an event of default occurred, *i.e.*, whether the acceleration clause had been exercised. Defendants have instead argued that the HELOC and Mortgage have reached the maturity date and, consequently, that the amounts owed are due in full. Moreover, Defendants have consistently argued that they are entitled to enforce the mortgage. Defendants even state in their Motion that amount outstanding on the Mortgage is, "$34,870.77, together with interest at the present rate of 11.5% per annum…." (Doc. No. 16 at PageID 141.)

Therefore, the Court finds that any claims Defendants may have for foreclosure or ejectment are compulsory counterclaims that must be brought within this action.[5]

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants Mortgage Electronic Registration Systems, Inc. and RRA CP Opportunity Trust 1's Motion for Summary Judgment (Counts Four and Five of Complaint) (Doc. No. 15). Therefore, the Court finds:

---

[5] While the Court is granting Defendants' Motion on the declaratory judgment claims, the Court does not view that decision as negating Defendants' obligation to bring their compulsory counterclaims. Under Fed. R. Civ. P. 13(a), "[a] pleading must state as a counterclaim any claim that—*at the time of its service*—the pleader has against an opposing party…." (emphasis added). Therefore, since the counterclaims are evaluated "at the time of service," the fact Hanover's declaratory judgment claims have been dismissed is of no matter because the counterclaims existed at the time Defendants filed their answers. This Order should not be construed as giving Defendants carte blanche to amend their answer, however. Defendants will need to seek the Court's permission in accordance with Fed. R. Civ. P. 15 to file any amended pleadings.

1. Count Four of Hanover's Complaint for Declaratory Judgment - Declarations of Cancellation of the Note and Release of the Mortgage (28 U.S.C. §§ 2201, *et seq*.) (Doc. No. 1 at PageID 12-14) is **DISMISSED**;

2. Count Five of Hanover's Complaint for Declaratory Judgment - Declarations of Cancellation of the Note and Release of the Mortgage (ORC § 2721.01, *et seq*.) (Doc. No. 1 at PageID 14-16) is **DISMISSED**; and,

3. Any claim Defendants may have for foreclosure or ejectment are compulsory counterclaims that must be brought within this action.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, August 29, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE